OLIVER EDWARDS & another *vs.* CHARLES HALE & another.

A tenant under a written lease, at a rent payable quarterly, who holds over after the expiration of his term, is, in the absence of any agreement to the contrary, a tenant at sufferance; and he does not become a tenant at will by virtue of stipulations in the lease that he will " during the said term, and for such further term as the said lessee or any other person or persons claiming under him shall hold the premises, pay unto the lessors the said quarterly rent upon the day hereinbefore appointed for the payment thereof," and that he will " at the expiration of said term peaceably yield up unto the said lessors or those having their estate therein all and singular the premises."

CONTRACT brought to recover $450, for two quarters' rent of certain premises hired by the defendants of the plaintiffs.

The following facts were agreed in the superior court: The defendants took a lease of the premises of the plaintiffs, running from the 1st of July 1860 to the 1st of July 1862, at a rent of $900 a year, " by equal quarterly payments of two hundred and twenty-five dollars at the expiration of each and every quarter hereafter during said term, and at that rate for such further time as the said lessees, or any other person or persons claiming under them, shall hold the said premises or any part thereof;" and therein covenanted " that they will, during the said term and for such further time as the said lessees or any other person or persons claiming under them shall hold the said premises or any part thereof, pay unto the lessors, their heirs and assigns, the said quarterly rent, upon the day hereinbefore appointed for that purpose, . . . . . . and also all water taxes . . . . . . and also will keep all and singular the said premises in such repair as the same are in at the commencement of said term ; . . . . . . and, at the expiration of said term, peaceably yield up unto the said lessors or those having their estate therein all and singular the premises."

The defendants occupied the premises during the two years named in the lease, paying rent as therein stipulated; and remained in the occupation thereof until the 15th of September 1862, under the following circumstances: On the 15th of July the defendants informed the plaintiffs that they had hired other premises, and should move into them as soon as the same could

be got ready, and vacate the plaintiffs' premises. The plaintiffs said that the defendants should have given the notice before the lease was out. The defendants replied that they did not de- termine to remove until the day before. The plaintiffs answered that they regarded the defendants as tenants-at will, and should require the regular notice. The defendants said they thought they had the right to remove at any time. A few days after- wards the parties had another interview, at which the plaintiffs repeated that they regarded the defendants as tenants at will, and should require the regular notice, and the defendants said they regarded themselves as tenants at sufferance. The defend- ants continued to occupy the premises as before, nothing more being said or done by either party, until the 15th of September, when the defendants moved out and tendered the keys to the plaintiffs, which the plaintiffs declined to receive. On the 1st of October the plaintiffs demanded of the defendants $225 for one quarter's rent, and the defendants tendered to them $187.50, which the plaintiffs declined to receive. On the 1st of January 1863 the plaintiffs demanded payment of another quarter's rent.

Upon these facts, judgment was rendered for the plaintiffs, and the defendants appealed to this court.

*J. B. Thayer,* for the defendants, cited 1 Washburn on Real Prop. (2d ed.) 393, and cases cited ; *Delano* v. *Montague,* 4 Cush. 42 ; *Curtis* v. *Galvin,* 1 Allen, 215 ; *Hollis* v. *Pool,* 3 Met. 350 ; *Dorrell* v. *Johnson,* 17 Pick. 263, 266 ; *Sanders* v. *Richardson,* 14 Pick. 522 ; *Chesley* v. *Welch,* 37 Maine, 106 ; *Lithgow* v. *Moody,* 35 Maine, 214 ; *Kendall* v. *Moore,* 30 Maine, 327 ; *Russell* v. *Fabyan,* 34 N. H. 218.

*W. A. Field,* for the plaintiffs, cited *Theological Institute of Conn.* v. *Barbour,* 4 Gray, 329 ; *Jaques* v. *Gould,* 4 Cush. 384 ; *Salisbury* v. *Hale,* 12 Pick. 416 ; *Brewer* v. *Knapp,* 1 Pick. 332 ; *Conway* v. *Starkweather,* 1 Denio, 113 ; *Doe* v. *Bell,* 5 T. R. 471.

CHAPMAN J. The plaintiffs made to the defendants a lease of the premises under seal, for the term of two years terminating July 1st 1862. The defendants occupied under this lease, and have paid the rent to the end of the term. But they also held over, and did not quit the premises till September 15th 1862

If the lease had been silent as to such holding over, the defend-
ants would have been tenants at sufferance. This doctrine is
well sustained by the numerous authorities cited by the defend-
ants' counsel. It is sufficient to refer to 1 Washburn on Real
Prop. 393, and *Delano* v. *Montague*, 4 Cush. 42. The doctrine
that the lessor may at his election consider one who holds over
as a tenant at will, which is stated in *Conway* v. *Starkweather*,
1 Denio, 113, is contrary to the decision in *Delano* v. *Montague*,
and we do not find it well sustained by any authority. In order
that a new estate at will shall exist, there must be a new con-
tract, either express or inferrible from the dealings of the parties.

But the lease in the present case contains certain stipulations
on the subject of holding over, and it is necessary to consider
their effect. It first contains the plaintiffs' demise of the prem-
ises, terminating, as stated above, on the 1st of July 1862.
Then follows the defendants' general covenant to pay a yearly
rent by quarterly payments at the expiration of every quarter
during the term, " and at that rate for such further term as the
said lessees or any other person or persons claiming under them
shall hold the premises or any part thereof." This is followed
by another covenant that the lessees will, during the term " and
for such further term as the lessees or any other person or per-
sons claiming under them shall hold the premises or any part
thereof," pay said quarterly rent, and also water taxes, and keep
the premises in repair. After this is a covenant to yield up the
premises at the expiration of the term. These covenants for
the payment of rent, in case the lessees shall hold over, do not
give them the right to hold over. In *Salisbury* v. *Hale*, 12 Pick.
422, it is said by Shaw C. J. that " if a party covenants to pay
rent beyond the term, though it does not enlarge or alter the
term, it is still a valid contract, and the law will give it effect."
As it does not enlarge or alter the term, neither does it create
an estate at will at the expiration of the term. The holding
over is without right on the part of the tenant, and it is through
the laches of the landlord, and not by his agreement. 4 Kent
Com. (6th ed.) 117. He may at any time enter and expel the
tenant; and the correlative right of the tenant is to quit at any

time. Neither is bound to give notice to the other of his intent to terminate the occupation. The effect of the covenant is to fix the amount of rent which the tenant shall pay for his holding over. This amount depends upon the fair interpretation of the language used by the parties in each particular case.

In the present case the first covenant quoted above provides in unequivocal terms that the rent shall be *pro rata* for such further time as the lessees shall occupy. The next covenant is that they will pay during the term and for such further time as they shall hold the premises, " the said quarterly rent upon the day herein before appointed for the payment thereof." This covenant fixes the time when the rent for holding over shall be paid, viz., at the end of each quarter. But the plaintiffs contend that it also requires the amount of a full quarter's rent to be paid, though the time of occupation may have been less than a quarter. The last covenant standing alone might perhaps bear this construction. But the language is not clear, and its want of clearness arises from the fact that it relates to the rent which shall accrue during the term, as well as to that which may be due for holding over.

But as the payment is clearly made *pro rata* by the first covenant, the other covenant construed in connection with it ought not to be regarded as establishing a different rate.

This clause respecting the payment of a *pro rata* rent in case the lessee holds over is very convenient. It often happens that a tenant who intends to quit at the end of his term is not able to complete his arrangements promptly, and desires to remain for a short time after the term has expired. It is often convenient to the landlord to permit him to do so, provided he acquires no rights thereby, and can be turned out without notice. The covenant for the payment of rent during such holding over prevents all dispute in respect to that matter, and the landlord may forbear to exercise his rights without losing them. If the holding over be for a short time, a full quarter's rent would make an unreasonable compensation.

The facts agreed in this case do not show that an estate at will was created by any new contract, either express or to be

inferred from the dealings of the parties. When the plaintiffs notified the defendants that they should regard them as tenants at will, the defendants replied that they regarded themselves as tenants at sufferance. ( They thus refused to accept a tenancy which would give them any right to remain, and the mere act of remaining for two months and a half after their term had expired did not create such right, or change the character of their occupation. The plaintiffs are entitled, according to the terms of the lease, to receive a *pro rata* rent during that time. As the amount due has been tendered to the plaintiffs and brought into court, judgment must be for the defendants.